# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Southchay CHAREUNSACK | : | |
| | : | |
| Plaintiff | : | Case No. 25-5976 |
| v. | : | |
| Kristi NOEM, et al. | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION AND
## MOTION TO AMEND COMPLAINT

Plaintiff, by and through undersigned Counsel, submits this Memorandum in Support his Motion for Preliminary Injunction and Motion to Amend Complaint. We respectfully assert that the Government opposition in this matter is incorrect in stating that this Complaint was filed in connection with the Plaintiff's removal proceedings. This Complaint is a direct challenge to the USCIS denial of the Plaintiff's N-600. The Complaint seeks an independent judicial determination of the claim to derivative US Citizenship that was never properly considered in removal proceedings. If this Complaint is decided in Plaintiff's favor, it will result in recognition of an existing legal fact: that he has been a US citizen since January 20, 1993, the date his mother became a US citizen.

The current Complaint is not a challenge to the removal proceedings; rather, it is the only way for the Plaintiff to have his claim to US citizenship properly considered. As such, this Court should recognize its jurisdiction under 28 U.S.C. §1361 (Mandamus) and 28 U.S.C. §2201 (Declaratory Judgment). It should order the Government to produce a full Certified Administrative Record (CAR) as required by 5 U.S.C. §706 the Administrative Procedures Act (APA) and proceed with factfinding, especially on the primary issue of whether the Plaintiff's parents were married.

With respect to the Plaintiff's Motion for Preliminary Injunction, we respectfully assert that it too, is not connected to removal proceedings. The initial N-600 filing in this matter was made in 2020. At that time the Plaintiff was in regular annual contact with ICE after the removal order. He was not in any danger of being removed because of decades-long policies from Laos not to accept 1970's-era refugees back into that country. The N-600 was filed not for the Plaintiff to avoid removal, but rather for him to be able to stabilize his life in the US. His contacts with

law enforcement are more than 20 years old; since that time, he has started a human resources business with more than 200 employees.  When he became aware that he may have had a claim to US citizenship that was not properly considered in the previous removal proceeding, he filed the N-600 with USCIS. The Government took almost 5 years to complete administrative adjudication until it finally denied that filing on February 25, 2025. It is that denial that is the subject of this case, not any action to remove the Plaintiff from the US.

The Plaintiff's Motion for Preliminary Injunction was filed because the Government has increased the use of detention against people it perceives to be non-US citizens. The Plaintiff knew the Government did not accept his claim to be a US citizen and was concerned it would detain him as a result, especially if he were to file an action like this Complaint. It was this concern of being unlawfully detained – the Department of Homeland Security has no authority to detain a US citizen – that led to the filing of the Motion for Preliminary Injunction. Upon information and belief, the Government does not have, nor will it obtain, a travel document or authorization from the government of Laos to deport the Plaintiff there. This is precisely the reason it did not detain him for almost twenty years since his removal proceeding. The detention in this situation is not a legitimate exercise of Government power. It is an attempt to coerce the Plaintiff into abandoning his claim to US citizenship. For these reasons, we respectfully assert that a preliminary injunction is appropriate in this matter.

In addition, the Defendants' decision to detain the Plaintiff in retaliation for asserting his citizenship claim has given rise to a cause of action under Habeas Corpus. As a result, we are respectfully moving that this Court allow the amendment of the Complaint to reflect this change in control over the Plaintiff's physical person and consider this action as a Petition for Writ of Habeas Corpus in addition to the administrative claims connected to the N-600 denial and refusal to recognize the Plaintiff's existing US citizenship.

Finally, even if this Court were to conclude that it does not have jurisdiction over this matter, the proper action to take is to transfer this matter to the Court of Appeals.  This would allow the Court of Appeals to review the merits of this matter and remand it to this Court for additional factfinding.

## I.    THE PETITIONER IS SEEKING REVIEW OVER THE 2025 ADMINISTRATIVE DENIAL OF HIS N-600, NOT CHALLENGING THE 1997 REMOVAL PROCEEDING

As asserted above, the Government has misconstrued this Complaint as a challenge to removal when in fact, it is seeking recognition of an already-existing legal fact. Derivative citizenship, unlike naturalization, involves no agency discretion or decision making beyond a

basic finding of fact. The statute at 8 USC 1321(a)(3)[1] functions by operation of law. As a result, that means if all pre-requisite conditions are met then Mr. Chareunsack is a citizen of the United States.

The Government response itself demonstrates that this issue was never properly addressed in the removal proceeding. Gov't. Op. at 20, citing Exh. E ("not sure" about his father). The reality is that the Immigration Judge addressed the matter of potential US citizenship in a summary fashion. There was no substantive fact finding or review of specific records. The Plaintiff in those proceedings was *pro se*. More importantly, he was proceeding under the mistaken impression that his parents were lawfully married. As discussed below, he did not come to recognize that his parents were not lawfully married until years later. He was not in a position to assert a claim to derivative US citizenship and the Immigration Judge did not sufficiently investigate the matter.

In these matters, it is standard practice for an Immigration Judge, when faced with a serious claim, to provide a full hearing or to rely on the administrative review that is provided by filing an N-600 or similar claim with the USCIS.

In this case, the Immigration Judge did neither of these things, because he was proceeding under the same basic misconception that has ruled the Plaintiff's status in the US from childhood – that his parents had been married, when in fact they had not.

The Immigration Judge was only responding to the facts as presented to him by the Plaintiff, given his limited knowledge at the time. Now, however, when the facts have become known, the facts indicate that Plaintiff has been a US citizen since 1993, that claim should be heard by this Court.

Further, the "Marriage Certificate" submitted by the Defendants in this matter is not a marriage certificate at all. We are attaching as Exhibit 11 a certified translation of the Defendants' Exh. C. It is in fact the birth certificate of Mr. Chareunsack's older sister, Phitsamai. The document raises further questions, in that if taken at face value, Bounpha was only 13 years old[2] at the time of the birth – a suspiciously young age to be giving birth. The documentary record in this matter is far from clear, and accordingly the matter is ripe for additional factfinding by the Court.

---

[1] The Government citation to cases involving naturalization is inapplicable to a derivative citizenship under §1321 because naturalization requires an element of discretion, whereas derivative citizenship functions as an operation of law. Gov't. Op. at 17-18. The cases cited by the Government that purport to lay a heavy burden, or shift that burden, onto the Plaintiff are not applicable in this situation. The Plaintiff does bear an evidentiary burden, but upon meeting that burden, he deserves recognition as a US citizen. There is no element of discretion in this matter. It is actually his right, not merely a privilege.

[2] Her Naturalization Certificate in Exh. 3 states her birth date as March 5, 1947.

## II.    THE COURT SHOULD EXERCISE JURISDICTION IN MANDAMUS SINCE THE PLAINTFF HAS NO OTHER AVENUE TO PURSUE HIS CLAIM AND HE HAS SHOWN HE IS A US CITIZEN

The clearest avenue for the Court to address this matter is by exercising Mandamus jurisdiction. This matter clearly meets the two elements required to assert jurisdiction. To obtain that relief Petitioner must show: (1) that he has "no other adequate means to attain the desired relief"; and (2) that his "right to the writ is clear and indisputable." *Phuc Huu Nguyen v. U.S. Citizenship & Immigr. Servs.*, No. 1:CV-09-2211, 2010 WL 3521910, at *5 (M.D. Pa. Aug. 31, 2010) (quoting *In re Nwanze*, 242 F.3d 521, 524 (3d Cir. 2001).

First, there is no other available forum for the Plaintiff to have his claim for US citizenship properly adjudicated. The removal proceedings ended long ago and any challenge or attempt to reopen those proceedings would be out of time. The administrative recognition of derivative US citizenship provided by the filing of an N-600 was, and remains, the most appropriate way to adjudicate this matter. While Immigration Judge's may defer to USCIS decisions in N-600 cases when the issue of derivative citizenship is raised in proceedings, the Immigration Judge in this matter never did that, precisely because he never had this issue before him to begin with, since the N-600 was filed years after the conclusion of removal proceedings.

The Plaintiff filed his N-600 administratively with the USCIS in 2020, more than 2 decades after his removal order. This N-600 filing was a pre-requisite to any recognition of this issue by the Immigration Court, Board of Immigration Appeals, or any other part of the administrative removal process. Simply put, the issue of derived U.S. citizenship is one that the removal system normally leaves to the USCIS, and the Plaintiff here has been proceeding accordingly. The only proper way for him to have his US citizenship recognized is by having his N-600 adjudicated – which is why he filed this Complaint.

Second, the Plaintiff has demonstrated he merits relief – to wit, the recognition of his existing US citizenship. At a minimum, he has demonstrated that this is an issue of fact that rests on a single disputed fact – whether his parents were married or not.

To summarize, the statute controlling this matter 8 U.S.C. §1321(a)(3) operates to make a person a US citizen by derivation if specific criteria are met. In this matter, those criteria are: the naturalization of Plaintiff's mother before he turned 18; and his admission as a Lawful Permanent Resident before he turned 18. For him to derive solely on the basis of his mother's naturalization, he must demonstrate that his parents were not married. The only factual dispute in this matter is the Plaintiff's parents' marital status.

As asserted in the Complaint, the Plaintiff has standing to assert rights relating to the correct characterization of the legal relationship of his parents, and the Court has jurisdiction. *See, Miller v. Albright*, 523 U.S. 420, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998). These proceedings are the first opportunity the Plaintiff has had to assert this claim before a court. The removal proceedings never adequately addressed or ruled on potential citizenship claims. All of the parties in that proceeding were under the mistaken assumption that his parents were lawfully married.

The Government remains under the same misunderstanding now. Gov't. Op. at 19 (citing Gov't. Exh. C).  As noted above, this document is not a marriage certificate.  It is a birth certificate, and the dates in this document are cause for concern as to whether either person was of legal age to marry.

We respectfully assert that the Court should exercise Mandamus jurisdiction. In *Nguyen,* it was denied because the merits of the citizenship case failed. In this case, there is an issue of fact as to eligibility (here the issue of whether his parents were married). This Complaint is the only way for that issue to be resolved. At the very least it should not be denied unless and until there is a a fully developed Certified Administrative Record (CAR) for the Court to review the facts

## III.     THE GOVERNMENT IS REQUIRED TO PROVIDE A FULL CERTIFIED ADMINISTRATIVE RECORD (CAR)

As an appeal under the APA, this action cannot move forward without a Certified Administrative Record ("CAR"). 5 USC §706. The Government is incorrect in asserting the primacy of the removal proceedings when it has failed to produce the full CAR. In an APA review, as the Court determines whether an agency's stated reasons were arbitrary or capricious, it reviews "the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); 5 U.S.C. § 706 ("In making the foregoing determinations, the court shall review the whole record . . . ."). That record comprises "all documents and materials directly or indirectly considered by the agency." *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 878 F.2d 1258, 1262 (10th Cir. 2018) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993)).That record comprises "all documents and materials directly or indirectly considered by [the] agency." *Del. Dep't of Nat. Res. & Envtl. Control v. United States Army Corp of Eng'rs (USACOE),* 722 F. Supp. 2d 535, 539 (D. Del. 2010)

The Government has focused exclusively on this matter as if it were a removal case, not an APA review. We ask that the Court require the production of a full CAR as part of its next action in this matter. As demonstrated above, the development of the full, complete, and accurate factual history of the Plaintiff's life and history in the US requires a complete CAR.

## IV.     THE COURT SHOULD CAN AND SHOULD ISSUE A PRELIMINARY INJUNCTION IN THIS MATTER.

To warrant the issuance of a preliminary injunction, Petitioner must show: 1) he is likely to succeed on the merits of his claim; 2) he is likely to suffer irreparable harm if the injunction is not granted; 3) the balance of equities (and prejudice to the opposing party) weighs in his favor; and 4) an injunction serves the public interest.  *Winter v. Natural Resources Defense Council*, Inc., 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).  Where the U.S. government is the opposing party, the final two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

For the reasons outlined in the previous sections, Mr. Chareunsack is likely to succeed on the merits of his challenge to the denial of his N-600 petition.

*Denial of the Preliminary Injunction to Preserve This Matter Will Cause Mr. Chareunsack Irreparable Harm, as He is a United States Citizen.*

Mr. Chareunsack is likely to suffer irreparable harm in the form of unlawful detention and removal from the United States. Unlawful detention and removal of a U.S. citizen, Mr. Chareunsack, is a profound and irreparable harm. Indeed, while immigration and removal proceedings are civil, rather than criminal matters, removal from the United States "is a particularly severe penalty." *Padilla v. Kentucky*, 559 U.S. 356, 365, 130 S. Ct. 1473, 1481 (2010) (citing *Fong Yue Ting v. United State*s, 149 U.S. 698, 740, 13 S. Ct. 1016, 37 L. Ed. 905 (1893)). Immigration detention, again, technically civil under the law, is an outright deprivation of liberty that, for all practical purposes, is the same as criminal incarceration. *See Chavez-Alvarez v. Warden York City. Prison*, 783 F.3d 469, 470 (3d Cir. 2015) (noting that "merely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from penal measures"). In fact, the Department, through ICE, regularly houses immigration detainees in both federal and state prisons. *See* U.S. Immigration and Customs Enforcement, "Detention Facilities," *available at*: https://www.ice.gov/detention-facilities.

DHS refers to Mr. Chareunsack as a criminal, but the Department overlooks that Mr. Chareunsack's law enforcement encounters were all on or before his 20th birthday, and he finished his sentences and was released from prison in 2007—nearly two decades ago. Should the Department decide to detain Mr. Chareunsack pending the resolution of his N-600 appeal, he will be serving a new civil penalty that was not imposed as part of his criminal sentence but is nonetheless akin to criminal incarceration. If the Court agrees with Mr. Chareunsack that he is, indeed, a naturalized U.S. citizen, any time spent in immigration detention would be not only unlawful *per se*—because the INA does not authorize the U.S. government to detain U.S. citizens in immigration facilities—but also in excess of the sentence imposed by a criminal judge of the Commonwealth Pennsylvania, without the due process safeguards inherent in a criminal proceeding. Furthermore, because of the Laotian government's policy of not accepting 1970s-era refugees, DHS cannot show that Mr. Chareunsack's removal would be easily and quickly facilitated. As such, his detention in an ICE facility would have no foreseeable end.

It may be argued that Mr. Chareunsack can simply file a lawsuit against the Department and the U.S. government following an unlawful detention to seek monetary damages. *See TD Bank N.A. v. Hill*, 928 F.3d 259, 282 (3d Cir. 2019) (holding that the availability of *adequate* monetary damages belies a claim of irreparable harm). But that argument presupposes that monetary damages can *ever* adequately remedy an American citizen's unlawful deprivation of liberty. Although such remedies can mitigate the harm incurred from an unlawful detention, a mere monetary award cannot eliminate the enormity of harm incurred from unlawful detention. *See Armstrong v. Daily*, 786 F.3d 529, 546 (7th Cir. 2015) (finding the notion that tort law can adequately compensate for deprivation of liberty without due process of law "absurd"). *But see Thibodeaux v. Bordelon*, 740 F.2d 329, 338 (5th Cir. 1984) ("Due process does not require perfect process."). The Department essentially asks the Court to allow it to detain Mr.

Chareunsack until it is determined whether such detention is even authorized under federal law. For this position to succeed, they would need to show that his liberty for the duration of proceedings would harm both the Government's interests and the public interest. *See Leslie v. Holder,* 865 F. Supp. 2d 627, 636 (M.D. Pa. 2012) (reaffirming the precedential *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 223 (3d Cir. 2011) in determining that government bears the burden of proof in cases of unreasonable immigration detention). It cannot do so.

*The Department of Homeland Security and the Public Interest Will Not Be Harmed by the Issuance of an Injunction Against Removing or Detaining Mr. Chareunsack.*

Mr. Chareunsack concedes that the Department has a valid and important interest in upholding the immigration laws of this country. *See, Defendants'* Brief at 23. But if Mr. Chareunsack is correct that he is a U.S. citizen—not an immigrant subject to a removal order— then the Department has no valid interest in detaining and removing him. Indeed, the unlawful detention and removal of a United States citizen can have *no conceivable legitimate purpose*, let alone one significant enough to outweigh Mr. Chareunsack's own rights and interests in remaining free from unlawful detention and deportation.

Furthermore, the significance of the Department's supposedly paramount interest in enforcing its immigration laws is undermined by the fact that the Department failed to detain or remove Mr. Chareunsack for nearly 20 years following the entry of his deportation order. During that time, Mr. Chareunsack dutifully reported to ICE for his scheduled check-ins and committed no crimes.[3] At no time during those two decades did the Government attempt to detain or deport him, which it certainly had the ability to do. Only now, under new administrative priorities, does the Government assert the urgency of its duty to enforce his removal order.

Again, the Department points out that Mr. Chareunsack was convicted of serious criminal offenses in Pennsylvania. But, again, the Commonwealth of Pennsylvania determined that he had sufficiently been punished and rehabilitated from those crimes nearly two decades ago. And during the intervening years, he has rebuilt his life and become a positively contributing member of society. He has people who depend upon him—including his U.S. citizen mother and the 200+ employees of his business. Their interests factor into the equity calculus as well.

Finally, the public interest is not served by the Government's efforts to rapidly detain and remove anyone who has ever been accused of committing an immigration violation without

---

[3] Mr. Chareunsack missed only one check-in—the most recent one. Mr. Chareunsack reasonably feared wrongful detention and removal because of the Administration's well-publicized escalation of its efforts to detain and deport non-citizens, as the Administration itself boasts. *See* Department of Homeland Security, "Under President Trump and Secretary Noem, the Department of Homeland Security Has Historic Year," available at: https://www.dhs.gov/news/2025/12/19/under-president-trump-and-secretary-noem-department-homeland-security-has-historic (claiming "an estimated 1.9 million self-deportations and more than 622,000 deportations" during President Trump's first year).

regard for whether that person is actually an "alien" under the INA or not. The public interest is best served by the vigilant defense of due process. Mr. Chareunsack has a right to litigate his claim to citizenship in this Court. The Government should not be permitted to detain or remove him during that process in order to pressure him to abandon that right.

## V.   EVEN IF THE COURT FINDS IT DOES NOT HAVE JURISDICTION, THE PROPER COURSE OF ACTION IS TO TRANSFER THIS CASE TO THE COURT OF APPEALS.

Even if, *arguendo*, this Court were to find it lacks jurisdiction in this matter, the proper course of action would be to transfer this matter to the Court of Appeals. In *Jones v. DHS*, 325 F.Supp.2d 551 (E.D. Pa. 2004), the Petitioner in habeas proceedings argued that he was a "national" of the United States. There, the Court found that once the "removal issue" had been resolved, the matter "must be transferred to the Court of Appeals pursuant to 28 U.S.C. Sec. 1631." *Jones v. DHS,* 325 F.Supp.2d 551 at 555 – 56 (citing to *Constanza v. Riley,* 259 F.Supp.2d 418 (E.D.Pa.2003). This would provide the Court of Appeals to examine the issue of citizenship further and remand this matter for additional factfinding pursuant to *Espichan v. U.S. Att'y Gen.*, 945 F.3d 794 (3d Cir. 2019).

## VI.   CONCLUSION

For the foregoing reasons, the Court should grant the motion for a preliminary injunction. Further, the Court should allow the complaint to be amended to include a cause of action pursuant to a Writ of Habeas Corpus. Finally, even if the Court were to find that it did not have jurisdiction, the Court should transfer this matter to the Court of Appeals for the Third Circuit.

Respectfully submitted,


/s/ W. John Vandenberg
W. John Vandenberg
PA Bar ID 89676
Hogan & Vandenberg LLC
1608 Walnut St., Ste. 1301
Philadelphia, PA 19103
E: john@hvlawgroup.com
P: 610-664-6271
Attorney for Plaintiff

/s/ Joseph C. Hohenstein
Joseph C. Hohenstein
PA Bar ID 69226
Hogan & Vandenberg LLC
1608 Walnut St., Ste. 1301
Philadelphia, PA 19103
E: joe@hvlawgroup.com

P: 610-664-6271
Attorney for Plaintiff

/s/ Mark S. Karpo
Mark S. Karpo
PA Bar ID 70531
137 N. 9th St.
Philadelphia, PA 19107
E: markskarpo@gmail.com
P: 215-923-6364
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| Southchay CHAREUNSACK | : | |
| | : | |
| Plaintiff | : | Case No. 25-5976 |
| v. | : | |
| Kristi NOEM, et al. | : | |
| Defendants. | : | |

CERTIFICATE OF SERVICE

I certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: December 23, 2025

By: /s/ W. John Vandenberg
W. John Vandenberg
Co-Counsel for Plaintiff